UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICARDO EIRE,

*Petitioner*,

v. Case No. 3:26-cv-2180-JEP-LLL

AFOD CHARLES PARRA, et al.,

*Respondents*.
_______________________________________/

**ORDER**

Through counsel, Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 on August 20, 2026. (*See generally* Doc. 1). Petitioner argues, among other things, that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id.* at 8–9). He asks the Court to order his immediate release. (*Id.* at 10).

The Federal Respondents filed a response in opposition to the petition. (*See generally* Doc. 4). According to the Federal Respondents, "ICE intends to remove Petitioner to Mexico" but he has impeded his removal by refusing to sign two documents. (*Id.* at 6). Petitioner filed a reply arguing that his "refusal to sign the Notice of Removal in no manner prevents Respondents from

pursuing Petitioner's physical removal to a third country." (Doc. 5 at 4). Upon review of the parties' filings, the Court finds that the petition must be granted.

**I.**

Petitioner, a citizen of Cuba, entered the United States in 1971. (*See* Doc. 1 at 3). An immigration judge ordered Petitioner removed on October 15, 2015. (*Id.* at 4). ICE then placed Petitioner on an order of supervision ("OSUP"). (*Id.* at 5). On February 11, 2026, ICE re-detained Petitioner.[1] (Doc. 4-2 at 1). On July 6, 2026, ICE presented Petitioner with a Notice of Removal to Mexico ("Notice"), and Petitioner refused to sign it. (Doc. 4-3 at 1). A few weeks later, on July 29, 2026, ICE gave Petitioner a Warning for Failure to Depart ("Warning"), and he, likewise, refused to sign it. (Doc. 4-4 at 1).

**II.**

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8

[1] While Petitioner alleges that ICE re-detained him on February 10, 2026, (*see* Doc. 1 at 5), the detention records the Federal Respondents attach to their response reflect that he was actually re-detained on February 11, 2026, (*see* Doc. 4-2 at 1). This discrepancy ultimately does not affect the Court's ruling.

U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*." *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

**III.**

Here, Petitioner was taken into ICE custody on February 11, 2026, (Doc. 4-2 at 1), and he filed his petition on August 20, 2026—over six months after his re-detention, (*see generally* Doc. 1). Although Petitioner had been in ICE custody longer than 180 days when this case was filed, the Federal

Respondents ask the Court to toll the six-month period because Petitioner impeded his removal by refusing to sign the Notice and Warning. (Doc. 4 at 6).

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then

ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); *see Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) (unpublished but persuasive) ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) (unpublished but persuasive) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701).

Here, the Federal Respondents have not shown that Petitioner's failure to sign the Notice and Warning was akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). The documents that Petitioner refused to sign are (1) a notice to him about ICE's intention to remove him to Mexico and (2) a warning about his failure to depart

that outlines the steps that he must take to effectuate his removal—not applications for travel documents or forms that would otherwise appear to assist in his removal. (*See* Doc. 4-3 at 1; Doc. 4-4 at 1–2). The Federal Respondents fail to show that Petitioner's signature on these forms is required for Petitioner's removal. Thus, the Court finds that the presumptively reasonable six-month period of detention expired prior to Petitioner filing the petition.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 2015, and he was released on an OSUP the same year. (Doc. 1 at 4–5). He was re-detained on February 11, 2026, (Doc. 4-2 at 1), and he contends that "there is nothing indicating that ICE is able to physically remove Petitioner to Cuba because Cuba is a 'recalcitrant country' as recognized by the U.S. Government," (Doc. 1 at 6). Further, Petitioner contends that the Federal Respondents' "efforts at removing Petitioner to a third country have also failed." (*Id.*). Petitioner has now been detained for over eight months, yet ICE still has been unable to remove him. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

In their response, the Federal Respondents merely assert that "ICE intends to remove the Petitioner to Mexico." (Doc. 4 at 2). However, they do not explain how, or when, they plan to effectuate Petitioner's removal. (*See generally id.*). Petitioner now has been in ICE custody for over eight months—more than two months longer than the presumptively reasonable period—with ICE being unable to remove him or otherwise provide more specific details on when he will be removed. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

Thus, based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release").

Accordingly, it is **ORDERED**:

1. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim.[2] Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on October 28, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Counsel of Record

[2] Because the Court grants relief on Petitioner's *Zadvydas* claim, the Court need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").